BOBBIE R. BAILEY, SBN 159663
bbailey@leaderberkon.com
EMILY K. DOTY, SBN 297222
edoty@leaderberkon.com
LEADER & BERKON LLP
660 South Figueroa Street, Suite 1150
Los Angeles, CA 90017
Telephone: (213) 234-1750
Facsimile:  (213) 234-1747

Attorneys for Plaintiff
**BASF CORPORATION**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BASF CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>LAGUNA BEACH COLLISION CENTER, INC.,<br><br>　　　　　Defendant. | Case No. 8:18-cv-00637-JLS-DFM<br><br>**DECLARATION OF ADRIAN FIERRO IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT**<br><br>Date:　August 24, 2018<br>Time　 2:30 p.m.<br>Place:　Courtroom 10A<br>　　　　Hon. Josephine L. Staton |

I, Adrian Fierro, declare as follows:

1.　I am employed by plaintiff BASF Corporation ("BASF") as a Regional Business Manager for the Automotive Refinish Coatings business. I am personally familiar with the facts set forth below and, if called as a witness and properly

- 1 -
*BASF Corporation v. Laguna Beach Collision Center, Inc.*
Case No. 8:18-cv-00637-JLS-DFM
**DECLARATION OF ADRIAN FIERRO**

sworn, could and would testify to them from my own knowledge, except as where stated on information and belief and as to those facts, I believe them to be true. I make this declaration in support of BASF's Motion for Entry of Default Judgment against defendant Laguna Beach Collision Center, Inc. a/k/a and/or d/b/a Beach Cities Auto Collision ("Defendant").

2. In my role as a Regional Business Manager, I am familiar with BASF's contractual relationships with body shops as they relate to the body shops' purchases of BASF aftermarket paints, refinishes, costings, primers, thinners, and reducers, as well as other related products and materials, for the reconditioning, refinishing, and repainting of automobiles, trucks, and other vehicles (collectively, "Refinish Products"). I am also familiar with the payments made and received by BASF pursuant to such contracts.

3. On or about June 16, 2016, BASF and Defendant entered into a Requirements Agreement, a true and correct copy of which is attached hereto as Exhibit A.

4. Pursuant to the Requirements Agreement, Defendant was required to fulfill one hundred percent of its requirements for Refinish Products, up to a minimum purchase requirement of $525,000, with BASF Refinish Products ("Minimum Purchases").

5. In consideration of Defendant fulfilling all of its obligations under the Requirements Agreement, BASF paid Defendant $65,000 ("Contract Fulfillment Consideration").

6. The Requirements Agreement indicates that if it was terminated for any reason prior to Defendant purchasing at least one-fifth of its Minimum Purchases, Defendant was to refund 110% of the Contract Fulfillment Consideration to BASF, which is $71,500.

7. Upon information and belief, Defendant breached and ultimately terminated the Requirements Agreement by, among other things, entering into an agreement with one of BASF's competitors and failing to purchase one hundred percent of its requirements for Refinish Products from BASF.

8. BASF's records indicate that Defendant's purchases of BASF Refinish Products pursuant to the Requirements Agreement total $0. A purchase balance of $525,000 remains due and owing to BASF under the terms of the Requirements Agreement.

9. Defendant has failed and refused to refund BASF the sum of $71,500, which represents 110% of the $65,000 in unearned Contract Fulfillment Consideration.

10. Based on the foregoing, Defendant is indebted to BASF in the amount of $596,500.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July _25_, 2018.

_____
Adrian Fierro

# Exhibit A

# REQUIREMENTS AGREEMENT

Agreement made as of ___16- June 2016___ ("Effective Date"), with each twelve (12) months thereafter being a Contract Year by and between BASF Corporation, 26701 Telegraph Road, Southfield, MI 48033 ("BASF"), and Beach Cities Auto Collision, 2147 Laguna Canyon Road, Laguna Beach, CA 92651 ("BODY SHOP"). [handwritten insert: Laguna Beach Collision Center, Inc. dba]

WHEREAS, BODY SHOP engages in the business of refinishing and repainting the bodies of automobiles, trucks, and other vehicles, ("Business") either directly or through persons or legal entities over which BODY SHOP has control ("Controlled Businesses"), which requires the use of after-market paints, refinishes, coatings, primers, thinners, and reducers ("Refinish Products"); and

WHEREAS, BASF is a manufacturer of Refinish Products;

NOW THEREFORE, it is agreed by and among the parties as follows:

1. Term: The Term of this Agreement shall commence with the first full calendar month subsequent to the Effective Date and continue until BODY SHOP and or until its Controlled Businesses have purchased $525,000 in the aggregate of BASF Glasurit and RM Products, at suggested refinish pricing ("Minimum Purchase Requirements"), subsequent to the Effective Date. However, BASF shall have the right to terminate this Agreement at any time if BODY SHOP or any Controlled Business makes an assignment for the benefit of creditors, declares or is declared bankrupt, or either a controlling interest in the BODY SHOP or substantially all of the assets of the BODY SHOP are sold to a third party who is already under an obligation to use BASF Products pursuant to a contract with BASF Corporation or any of its subsidiaries.

2. Purchase of Requirements of Products: During the Term of this Agreement, BODY SHOP shall, and shall cause each of its Controlled Businesses to purchase from an authorized BASF distributor one hundred percent (100%) of their Refinish Products requirements for the Business specifying only BASF Glasurit and RM brand products.

3. Contract Fulfillment Consideration: Within forty-five (45) days of the Effective Date of this Agreement, BASF shall pay to BODY SHOP $65,000 in consideration of BODY SHOP fulfilling all of its obligations under this Agreement for the entire Term. Should this Agreement terminate for any reason prior to the expiration of the Term set forth above or should BODY SHOP be sold during the Term, in addition to whatever rights and obligations the parties may have to each other, BODY SHOP shall

promptly, but in no event more than sixty (60) days, refund the Contract Fulfillment Consideration in accordance with the following schedule:

| Purchases | | Contract Fulfillment Consideration Refund |
|---|---|---|
| a. | less than 1/5th of Minimum Purchases | 110% |
| b. | less than 2/5th and greater than 1/5th of Minimum Purchases | 95% |
| c. | less than 3/5th and greater than 2/5th of Minimum Purchases | 75% |
| d. | less than 4/5th and greater than 3/5th of Minimum Purchases | 55% |
| e. | less than 5/5th and greater than 4/5th of Minimum Purchases | 35% |
| f. | After 5/5th of Minimum Purchases | 0% |

4. **Severability**: In the event that any provision of this Agreement shall be held invalid or unenforceable for any reason by a court of competent jurisdiction, such provision or part thereof shall be considered separate from the remaining provisions of this Agreement, which shall remain in full force and effect. Such invalid or unenforceable provision shall be deemed revised to effect, to the fullest extent permitted by law, the intent of the parties as set forth therein.

5. **Loaned Equipment and Consigned Inventory**: BASF shall loan the following equipment to each of BODY SHOP's facilities or Controlled Businesses where the Business is conducted ("Loaned Equipment"):

-- Quart & Gallon Lids
-- Quart & Gallon Shelves
-- SmartTrak IV License Fee
-- Mixing Machine Motor
-- Pearl Headers

BASF shall also place on consignment, 1 Set of Onyx Toners ("Consigned Inventory').

BASF shall prepare and forward to its filing agency, the required Form UCC-1 evidencing BASF's ownership of the Loaned Equipment, and BASF shall have the right to label the Loaned Equipment as the property of BASF, which signage shall remain clearly visible.

The Loaned Equipment shall remain the property of BASF, shall only be used in conjunction with BASF Refinish Products, and at the option of BASF, shall be surrendered to BASF at the end of this Agreement in the same condition as delivered, reasonable wear and tear excepted. All Loaned Equipment shall be installed by or at the direction of BODY SHOP, which shall be responsible for compliance with all applicable laws and regulations concerning the installation and operation of the Loaned Equipment.

BODY SHOP hereby acknowledges receipt of the document entitled "Important Safety Notice." Computer equipment such as: (a) CPUs, (b) terminals, (c) keyboards, (d) printers, etc., are NOT explosion-proof and should NOT be installed or used within a mixing area where paint and paint products are dispensed or used. BODY SHOP agrees to: (a) install or have the Loaned Equipment installed in a safe area of its facility, and (b) BODY SHOP will indemnify and defend BASF in the event of any harm resulting from the installation, use, or maintenance of the Loaned Equipment. BODY SHOP shall be solely responsible for the costs of repair of the Loaned Equipment, including the costs of any replacement parts, in the event that BODY SHOP damages the Loaned Equipment as determined by BASF. Otherwise BASF shall provide maintenance, upgrades, and support as reasonably needed for all Loaned Equipment.

Upon demand by BASF, but in no event earlier than the termination or expiration of the Term, BODY SHOP shall pay BASF for all or that portion of the consumed Consigned Inventory in accordance with the then current prices for said Consigned Inventory and this Agreement. In the event that the Consigned Inventory is unopened, BODY Shop may return Consigned Inventory to BASF at no charge if the Consigned Inventory is deemed in saleable condition by BASF.

6. Confidential Information: This Agreement, and all of its terms, as well as any other information designated confidential and disclosed by either party to the other will be kept in confidence and restricted to those persons in the recipient's business who need to know same, except as to any such information which the recipient shows has become public information or which may be required to be disclosed by law.

7. Governing Law: This Agreement and performance or non-performance hereunder shall be governed by and construed under the laws of the State of Michigan without regard to principles of conflicts of law. Each party hereto submits to the jurisdiction of the courts located in Oakland County, Michigan in connection with any dispute arising under this Agreement.

8. Assignment: This Agreement may not be assigned or otherwise transferred except upon the prior written consent of both parties. However, subject to BASF's consent, BODY SHOP shall cause the party or parties which, individually or in the aggregate, acquire all or substantially all of the assets of any location of a Controlled Business where the Business is conducted, to assume the rights and obligations under this Agreement.

9. <u>Notices</u>: All notices from either party to the other relating to this Agreement are to be sent by First Class United States mail, postage prepaid (effective three (3) days after postmark), overnight mail or delivered personally to the respective addresses set forth above.

10. <u>Warranty</u>: The parties hereto represent and warrant to each other that the execution of this Contract is not in breach of any other legal obligation that said party may have to any third party and that each party hereto agrees to defend and indemnify the other for breach of this representation and warranty.

11. <u>Entire Agreement</u>: This Agreement constitutes the entire agreement between BASF and the BODY SHOP, terminating and superseding any prior agreements relating to the subject matter hereof and may be amended only by a writing signed by both parties, notwithstanding any course of dealing or the exchange of correspondence or documents not mutually executed.

12. <u>Expiration</u>: The offer reflected in this agreement is valid from sixty days of BASF's signature date; if the agreement is not executed by BODY SHOP on or before that date the offer will be deemed automatically withdrawn.

IN WITNESS WHEREOF, the parties have entered into this Agreement effective as of the day and year first above written.

**BASF Corporation signature date**

BY: *[signature] ORBush for C Toomey*
TITLE: <u>Senior Vice President, Coatings Solutions NA</u>
DATE: 6/10/16

Laguna Beach Collision Center, Inc, dba
**Beach Cities Auto Collision**

BY: *[signature]*
TITLE: President / Owner
DATE: 6- -16